Jeffrey T. Hammerschmidt, #131113
Mark A. Broughton, #079822
William A. Parry, #201617
Rachel W. Hill, #151522
Christina A. Widner, #284512
HAMMERSCHMIDT BROUGHTON LAW CORPORATION
2445 Capitol Street, Suite 150
Fresno, California 93721
Tel: (559) 233-5333
Fax: (559) 233-4333

Attorneys for Defendant, IRAN DENNIS FOSTER

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>IRAN DENNIS FOSTER,<br><br>　　　　Defendant. | Case No.: 1:15-cr-00104 AWI SKO<br><br>DEFENDANT'S NOTICE OF MOTION AND MOTION TO REVOKE DETENTION ORDER<br><br>Date: October 1, 2015<br>Time: 1:30 p.m.<br>Courtroom: 9 |

//
//
//
//
//
//
//
//
//
//
//

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on October 1, 2015, or as soon thereafter as this matter can be scheduled pursuant to the mandate of 18 U.S.C. § 3145(b) that a motion for revocation "shall be determined promptly" before the Honorable Boone, Defendant Iran Dennis Foster, by and through his counsel of record, Mark A. Broughton, will and does hereby move this Court for an order revoking the detention order issued March 31, 2015, pursuant to 18 U.S.C. §3142(e) and (i).

This motion is made pursuant to the United States Constitution; Federal Rules of Criminal Procedure, Rule 12(b)(2); Eastern District of California Local Rule Crim. 16-440; and all applicable statutory and case law.

This Notice of Motion; Memorandum of Points and Authorities; the attached exhibits; the files and records of this case; and such argument support this motion and further law and evidence as may be presented at the time of the hearing.

Respectfully submitted,

Dated: September 22, 2015

/s/ Mark A. Broughton
MARK A. BROUGHTON
Attorney for Defendant
IRAN DENNIS FOSTER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the spring of 2014, the FBI and the ATF began conducting a year-long investigation of former Fresno Deputy Police Chief, Keith Foster[1]. As part of that investigation, agents placed wiretaps on the phones of Keith Foster and his nephew, Iran Dennis Foster (referred to hereafter as "Mr. Foster.")

On March 25, 2015, a criminal complaint was filed against Keith Foster, and five other individuals, including Mr. Foster. Mr. Foster was arrested the next day, March 26, 2015, without incident.

On March 31, 2015, Pretrial Services filed a report that recommended the release of Mr. Foster with specific conditions while he awaits trial. The conditions set forth by Pretrial Services reasonably assure Mr. Foster's appearance at future court dates, as well as the safety of the community. A criminal defendant is entitled to pretrial release if there are conditions, or a combination of conditions, that a court can fashion to reasonably ensure his appearance at future court dates, and ensure the community's safety. These conditions proposed by Pretrial Services were more than adequate to satisfy the two prong test, yet the magistrate judge disregarded them and ordered Mr. Foster's detention while he awaits trial.

In determining whether or not a defendant is a flight risk, one factor weighed heavily is the defendant's ties to the community. Mr. Foster grew up in Fresno County. He is 44 years old and has only lived outside of Fresno for a total of six years. He has five children who he is raising in the community. While one is away at college in Southern California, the other four, ages 17, 8, 6, and 5 are here and in need of their father.[2] Mr. Foster wants desperately to be a father and prepare his children for the possibility of his incarceration. Mr. Foster also requests his release in order to resume his role in looking after his father who is 74 years old with Stage 3 Lung Cancer.

He also wants to be released in order to get proper medical attention, of which he is in desperate need. Since his incarceration in late March, he has been diagnosed with a varicose

---

[1] Keith Foster will only be referred to as Keith Foster throughout this document; Iran Dennis Foster will be referred to as Mr. Foster.

[2] As a result of the present case, there is currently a custody and visitation action pending in Fresno Superior Court (Case No.: 10 CE FL 01453) with a hearing set for October 16, 2105.

3

seal. This is a tumor of veins that is restricting blood flow in his body. He was told surgery was required in April, but has not yet been scheduled. Doctors have also told him that biopsy would be done; however, no action has been taken. His condition has symptomized itself in the form of swollen testicles, and the urination of blood. He has also lost a considerable amount of weight. Mr. Foster has continually requested shoes and blankets—to no avail—to keep him warm, which is considerable when one takes into account that the median temperature is near triple digits in Kern County. The extent of his medical treatment began and ended with the distribution of aspirin by the medical staff. These health issues all materialized after Mr. Foster's incarceration.

Mr. Foster has a third party custodian awaiting his release who has been approved by Pretrial Services. Gloria Marshal is his aunt who has been a positive influence on him since his mother overdosed when he was seven. She has no history of substance abuse, nor does she have any criminal history. She understands the responsibilities and consequences of her role as a third party custodian, and accepts them willingly, perhaps it's because Mr. Foster does not have any failure to appears on his record.

A 32-count indictment was filed against Keith Foster, and five other co-defendants on April 9, 2015. Mr. Foster is charged in 11 counts.[3] The overwhelming majority of the counts are based solely on possession and intent to sell marijuana. Only two of the counts are not related to marijuana, however, the government's evidence relating to these charges is insubstantial. A firearm was found inside a safe at Ms. Donabedain's home where Mr. Foster lives. Aside from a conviction that is two decades old, this was the only factor that the magistrate judge used in his decision that Mr. Foster posed a threat of danger to the community.

The government also alleges that Mr. Foster engaged in a conspiracy to distribute and possess methamphetamine, cocaine, and heroin with co-defendant Rafael Guzman. Defense counsel is not aware of any evidence that Mr. Foster actually intended to engage in any drug trafficking offense with Mr. Guzman. Discussions concerning the street value of narcotics and the logistics of procuring narcotics do not in and of themselves constitute a conspiracy. Moreover, even if the government has evidence to satisfy the legal elements of conspiracy, defense counsel is not aware of any evidence of any actual distribution of narcotics arising out of said discussions with Mr. Foster.

---

[3] Currently, Mr. Foster is the only defendant, of the six in this case, who is in custody, despite Pretrial Services recommending his release.

Under the totality of the Circumstances, including the presumption of innocence, Mr. Foster represents neither a serious risk of non-appearance nor a danger to the community. Moreover, there are conditions that can be fashioned that would reasonably assure Mr. Foster's appearance and the safety of the community—and Pretrial Services has recommended a possible combination of conditions sufficient to support release under the Bail Reform Act. Accordingly, Mr. Foster was improperly ordered detained under 18 U.S.C. § 3142, and, pursuant to 18 U.S.C. § 3145(b), he moves this Court for an order revoking the detention order and releasing him on his own recognizance pending trial in this matter.

## II. STANDARD OF REVIEW

A district court reviews *de novo* a magistrate judge's detention order under the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq. United States v. Koening,* 912 F.2d 1190, 1191 (9th Cir. 1990). The district court is free to consider whatever evidence is presented at the revocation hearing and may hold additional evidentiary hearings if necessary. *Id.* at 1193. The district court's review of the magistrate's detention order is to be conducted "without deference to the magistrate's factual findings" and "without deference to the magistrate's ultimate conclusion." *Id.* at 1192-93.

## III. ARGUMENT

**A.  Because There Exists a Combination of Conditions That This Court Can Fashion That Will Reasonably Assure Mr. Foster's Appearance as Required and the Safety of the Community, the Bail Reform Act Mandates That This Court Release Mr. Foster Pending Trial.**

Mr. Foster must be released pretrial if there is *any* condition or combination of conditions that "will reasonably assure [his] appearance ... as required or ... the safety of any other person or the community." § 3142(b). *See, e.g., United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("The Act mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.' 18 U.S.C. § 3142(e).")

The Bail Reform Act requires that this Court first evaluate, based on certain statutorily specified criteria set forth at § 3142(g), whether releasing Mr. Foster on his own recognizance is sufficient to reasonably assure (1) his appearance as required and (2) the safety of any other person and the community. § 3142(a).

The government has the burden of persuasion. With respect to the first prong of the analysis, the government bears the burden of establishing by a "clear preponderance of the evidence" that Mr. Foster presents a serious risk of non-appearance, which means that if it is a close call and the evidence cuts both ways—this Court must find that the government has not met its burden. *United States v. Townsend,* 897 F.2d 989, 994 (9th Cir. 1990). *See, e.g., United States v. Chen,* 820 F.Supp. 1205, 1208 (N.D. Cal. 1992) ("The Ninth Circuit's 'preponderance of the evidence' standard in pretrial detention matters is more than the usual 'tips the scales slightly' test applied in civil cases. To give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases, applying a 'clear preponderance' test.")

With respect to the second prong of analysis, the government bears the burden of establishing by clear and convincing evidence the Mr. Foster represents a future "identified and articulable threat to an individual or the community." *United States v. Salerno,* 481 U.S. 739, 751 (1987). If the government does not establish by a clear preponderance of the evidence that Mr. Foster presents a serious risk of non-appearance or by clear and convincing evidence that Mr Foster presents a particularized future danger, this Court must release Mr. Foster on his personal recognizance or an unsecured appearance bond. 18 U.S.C. § 3142(b).

If, based on the factors set forth in subsection (g), this Court determines that the government has satisfied its burden of persuasion with respect to non-appearance or future danger; this Court must release Mr. Foster subject to the least restrictive additional conditions that will *reasonably assure* his appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(c). If the government opposes release, then it (1) bears the burden of establishing by a clear preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure Mr. Foster's appearance as required or (2) bears the burden of establishing by clear and convincing evidence that there are no conditions or combinations of conditions that will reasonably assure the safety of the community from whatever particularized future danger has been established. Any close call mandates release subject to the proposed conditions.

In other words, the ultimate question is whether there are conditions that can be fashioned—such as the ones Pretrial has proposed—that would *reasonably assure* the individuals appearance and the safety of the community. *See, e.g., Hir,* 517 F.3d at 1091-92

(explaining that even where a defendant poses a danger, the court still must release him if there are a combination of conditions that would reasonably assure the safety of the community); *United States v. Scott*, 450 F.3d 863, 874 (9th Cir. 2006) (cautioning that a district court can only impose conditions on release if they are necessary to address defendant's demonstrated "heighten risk of misbehaving while on bail"); *United States v. Conway*, 2011 U.S. Dist. LEXIS 86034 (N.D. Cal. 2011) (releasing defendant charged with harboring a minor for use in a commercial sex act notwithstanding his extensive criminal history, lack of steady employment and use of narcotics, because there were conditions the court could fashion given his strong family ties, life long residence in the community and lack of foreign travel that would reasonably assure his appearance and the safety of the community.) Notably, "reasonably assure" *does not mean* "guarantee." *See, e.g., Hir*, 517 F.3d at 1092 n.9 ("Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed ... Required that release conditions guarantee the community's safety would fly in the teeth of Congress' clear intent that only a limited number of defendants be subject to pretrial detention.") (internal citation omitted.)

With respect to establishing that there are absolutely no combinations that this Court can fashion that will reasonably assure Mr. Foster's appearance and the safety of the community, the government bears a heavy burden. "[F]ederal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction... Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951.)

Upholding the Bail Reform Act, the Supreme Court explained that "in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. The Court cautioned that the Bail Reform Act should not be used by the courts as "a scattershot attempt to incapacitate those who are merely suspected of these serious crimes." *Id.* at 741. Accordingly, the Ninth Circuit has repeatedly emphasized that, "only in rare circumstances should release be denied [and] ... Doubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985); *see, e.g., United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972) ("The whole spirit of the Bail Reform Act, 18 U.S.C. § 3146, *et seq.*, is that a defendant

facing trial should be released, rather than detained, unless there are strong reasons for not releasing him.")

In other words, only in rare cases where a judicial officer finds by a clear preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the person as required, and/or by clear convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community; the judicial officer should order the detention of the person before trial. § 3142(e); *United States v. Scott,* 450 F.3d 863, 874 (9th Cir. 2006); *Hir*, 517 F.3d at 1086, 1091-92; *United States v. Dang*, 2013 U.S. Dist. LEXIS 112758 (N.D. Cal. 2013) (observing that while the defendant "poses a certain danger to the community and risk of flight, that is true in just about every case" and "if the mandate that close calls are to be resolved against detention means anything, [the defendant] must be released on the extremely restrictive conditions set by the court.")

1. **Mr. Foster has Rebutted the § 3142(e)(3) Presumption With Credible Evidence that He Represents Neither a Serious Flight Risk Nor a Danger to the Community.**

Pursuant to 18 U.S.C. § 3142(g), this Court must consider the nature and circumstances of the offenses charged, including whether the charged offense permits the government to make a motion for detention on the basis of danger and whether the charged offense raises a rebuttable presumption that there are no conditions a court can fashion that would reasonably assure the defendant's appearance and the safety of the community. Because Mr. Foster is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*), the government is permitted to move for detention on the basis of danger and there is a rebuttable presumption. 18 U.S.C. § 3142 (e)(3), (f)(1). However, the presumption is readily rebutted with some credible evidence that the defendant does not pose a serious flight risk and will not pose a danger to the community. *Hir,* 517 F.3d at 1086; *Conway*, 2011 U.S. Dist. 86304 (noting that the rebuttable presumption "is fairly easily met.")

The rebuttable presumption merely creates an initial burden of production on the defendant. *Hir*, 517 F.3d at 1086. The burden of persuasion to establish by a clear preponderance of the evidence that an individual poses a serious risk of flight, and by clear and

8

convincing evidence that the defendant poses a particularized future threat to a specific individual or community, remains at all times with the government. *Id.* If the defendant proffers some credible evidence that he does not pose *serious risk* of flight nor a future particularized danger to a specific individual or community, the presumption is rebutted. *Id.* Once the defendant rebuts the presumption, the burden is on the government to establish that there are *absolutely* no conditions the Court can fashion that will reasonably assure the defendant's appearance and the safety of the community. *See, e.g., Chen,* 820 F. Supp. at 1208 ("The government's burden of proof is not trivial. If the defendant can rebut the statutory presumption, the government must prove that no combination of conditions can reasonably assure the safety of the community and the appearance of the defendant.")

      Mr. Foster's circumstances cataloged in the introduction, as well as below, readily rebut this presumption. Indeed, the presumption was not raised as an issue at the detention hearing held in magistrate court. Mr. Foster is 44 years old. He does not have a passport. Mr. Foster grew up in Fresno and has significant family ties here, including five children. Rebecca Kern and he have four children together, a six year old, an eight year old, a seventeen year old, and a twenty year old. The twenty-year old is attending college in Southern California, and has been a point of pride for Mr. Foster. He has played a large role in ensuring his son does not follow the path of his father, unlike Mr. Foster. The seventeen year old is about to graduate from high school and Mr. Foster wants to be there to steer his child toward college and away from the life he knows all too well. Mr. Foster also has a five year old with Desire Carbajal. He wants to be a consistent presence in the three younger children's lives as they grow up. He has first-hand knowledge about the danger of growing up without a strong father figure.

      The charges levied against Mr. Foster carry the possibility of incarceration, and while he remains optimistic, he understands the gravity of his charges. Mr. Foster would like to use the time prior to trial to get his family affairs in order and prepare his children for the possibilities that lie ahead. Although there are other reasons, his children are all the motivation he needs to cooperate with Pre-Trial Services and the terms of his release while he awaits trial. *See, e.g., Dang,* 2013 U.S. Dist. LEXIS 112758, 11-12. ("A defendant's ties to the community that are most significant are the 'sort of family ties from which [a court] ... can infer that a defendant is so deeply committed and personally attached that he cannot be driven from it by the threat of a long prison sentence.'")

In addition to his children, Mr. Foster is very close with his aunt, Gloria Marshal. Ms. Marshal is 68 years old and has been Mr. Foster's closest relative for quite some time. He has used her residence as his mailing address for the past 30 years, and sees her several times a week. She has agreed to serve as a third-party custodian for Mr. Foster at her residence, located at 2358 S. Attucks, Fresno, CA 93706. Ms. Marshal is a respected, hard-working member of the community; she maintains two jobs, one with the Fresno Economic Commission, and another with the Low-Income Home Energy Assistance organization. Pretrial Services has discussed the responsibilities and consequences that come with being a third-party custodian with Ms. Marshal. She fully understands and accepts all that comes with the job. Pretrial services has also confirmed that she has no criminal history, she has no history of substance abuse, and that she is in fact qualified to serve as a third-party custodian for Mr. Foster.

As to the firearm found in the safe at the family home. Mr. Foster and Ms. Donabedian were cohabitants and now codefendants. There are now no firearms in the home. Moreover, Mr. Foster has no firearms in his possession, and he will comply with any court order regarding the possession of firearms.

Mr. Foster only has one felony conviction, which came over 20 years ago in 1995, for possessing a firearm. Mr. Foster was sentenced to 48 months probation, which he completed. There is also the matter of the two misdemeanor convictions for possession of firearms in 1991 and 1992. However, neither the two misdemeanors nor the felony convictions were violent crimes; they were simple possession convictions. "It is much harder, however, to imagine such a risk of physical harm often accompanying the conduct that normally constitutes firearm possession, for simple possession, even by a felon, takes place in a variety of ways (e.g., in a closet, in a storeroom, in a car, in a pocket) many, perhaps most, of which do not involve likely accompanying violence." *United States v. Singleton*, 182 F.3d 7, 14-15 (1999) (United States Court of Appeals for District of Columbia quoting the First Circuit, explaining that, "While felons with guns may as a class be more likely than non-felons with guns or felons without guns to commit violent acts, nothing inherent in a §922(g) offense creates a 'substantial risk' of violence warranting pretrial detention." *Ibed.*)

Furthermore, during the detention hearing held on March 31, 2015 there was a discussion regarding the conviction of Mr. Foster from 2003 out of Oregon. This conviction was reversed in 2005, yet it was still discussed by the U.S. Magistrate Judge as a pending, if not recent case.

The conviction was reversed 10 years ago, and the state of Oregon has not done anything to give any indication that the case is still pending.

The U.S. Magistrate also stated that his characterization of Mr. Foster as a flight risk didn't stem from his belief that he would flee the country, but his ability to abide court orders and make future appearances. While Mr. Foster has a history of contact with the justice system, there is no record of any failure to appear. Mr. Foster has demonstrated his commitment to make court appearances. These proceedings will be no different.

Mr. Foster has reestablished a relationship with his father. His grandparents raised him after his mother died from an accidental overdose when he was seven. His relationship with his father had been nonexistent, however he has since reconnected. His father suffers from Stage 3 Lung Cancer, and Mr. Foster has concerned himself with his father's wellbeing. His father's illness and their renewed relationship is yet another reason for Mr. Foster to comply with all the conditions of his release.

While Mr. Foster's employment status has been infrequent in the past, more recently he has enjoyed gainful employment as a courier for Peninsula Messenger Service, located 5757 E. Clinton #110, Fresno, CA 93727. He is confident that he will be able to reassume his duties as a courier if released. If Mr. Foster was not able to procure employment with the messenger service, then he is confident the he could find employment with Felix Automotive, located at 2060 E. Olive Ave, Fresno, CA 93701. Mr. Foster would remain employed during his release to provide for his family while he awaits trial.

Currently Mr. Foster is suffering from a varicose seal. Essentially there is a tumor of veins that have restricted the proper blood flow through his circulatory system. The doctors want to do a biopsy on the tumor to determine if it is cancerous. This has resulted in Mr. Foster's testicles swelling, as well as him urinating blood. He is constantly cold, which is considerable given his current climate. Most importantly, Mr. Foster has only been given aspirin for the pain he is in. He was initially moved from Fresno County Jail to Lerdo Detention Facility to receive medical treatment, however that has not been the case. If released, Mr. Foster will be able to seek the proper medical attention. His current medical problems give him more incentive to remain in county and receive continuous medical treatment.

Mr. Foster has presented more than just some credible evidence that he neither presents a risk of non-appearance or a danger to the community; the presumption is rebutted and the burden

is on the government to establish that there are absolutely no conditions this Court can fashion that will reasonably assure his appearance and the safety of the community—a burden the government cannot carry here.

### 2. Given the Totality of the Circumstances, the Government Cannot Satisfy Its Heavy Burden of Establishing that There are No Conditions this Court Can Fashion that Will Reasonably Assure Mr. Foster's Appearance as Required.

To carry its burden of persuasion, the government must establish by a clear preponderance of the evidence that there are no conditions this Court can fashion that would reasonably assure Mr. Foster's presence as required. "The purpose of a Section 3142(e) risk of flight determination ... is not to detain habitual criminals or deceitful persons; it is to secure the appearance of the accused at trial. *United States v. Hilmer*, 797 F.2d 156, 161 (3d Cir. 1986.) The requirement that the conditions of release should be designed to "reasonably assure" a defendant's appearance should not be read to require guarantees against flight; "the Bail Reform Act contemplates only that a court be able to 'reasonably assure,' rather than guarantee." *Hir*, 517 F.3d at 1092 n.3.

In addition to the exceptionally strong family ties the Mr. Foster has binding him to Fresno, and the fact that he has lived in the area for the vast majority of his life, and does not have a passport, Mr. Foster also has an impressive track record of making his court appearances. Pretrial services reports zero failures to appear. Mr. Foster has adequately demonstrated his commitment to following the court's orders over the past twenty plus years.

Instead of looking to Mr. Foster's history of consistent court appearances, the magistrate judge focused on a conviction that was reversed 10 years ago, a 23-year-old conviction, and Mr. Foster's ability to send a package to another state. The magistrate judge cites the ability of Mr. Foster to send a package via FedEx to New Mexico as though it is an indication that he will flee once released. Merely having mailing contacts outside the jurisdiction cannot be considered to be a factor in determining the defendant's flight risk. Furthermore, the electronic monitoring system, suggested by Pretrial Services, would alleviate any risk of flight from the jurisdiction.

In June of 1992, Mr. Foster was convicted of misdemeanor possession of a concealed weapon. The magistrate judge highlighted the fact that Mr. Foster was in public with the firearm when he as contacted by the police. However, the two plus decades that passed between that conviction and now is not emphasized. The magistrate then cites one more 20-year-old

conviction for felon in possession of a firearm, which happened in 1995. In continuing his mentioning of cases that go back nearly a quarter century, the magistrate judge cited a 1994 case that resulted in dismissal. The magistrate judge did not mention a single case that resulted in the conviction of Mr. Foster that happened during this millennium, nor did he mention that during these cases, Mr. Foster never once failed to appear.

Given the totality of the circumstances, the conditions that Pretrial Services has proposed (including location monitoring, a curfew, gainful employment, and a reputable third party custodian) are more than sufficient to reasonably assure Mr. Foster's appearance as required.

3. **Given the Totality of the Circumstances, the Government Cannot Satisfy Its Heavy Burden of Establishing that There are No Conditions this Court Can Fashion that Will Reasonably Assure the Safety of the Community.**

The Bail Reform Act 1984, 18 U.S.C. § 3141 *et seq.*, limits the power of the court to deny pretrial release to only the "**small but identifiable group of particularity dangerous** defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." 1984 Code Cong. & Ad. News at 3189 (emphasis added); *see Salerno,* 481 U.S. at 742 (explaining that the judicial officer who presides over a detention hearing "is not given unbridled discretion in making the detention determination. Congress has specified the considerations relevant to the decision.")

The Supreme Court upheld the Bail Reform Act in *United States v. Salerno* because the Act narrowly provides for the pretrial detention of only a narrow subset of particularity dangerous defendants with stringent safeguards to protect the fundamental liberty interest of the innocent, who, given the presumptions of innocence, includes those individuals with pending charges. *United States v. Salerno,* 481 U.S. 739, 750-51 (1987); *c.f. Salerno,* 481 U.S. 739, 767 (Marshal, J., dissenting) ("The presumption of innocence protects the innocent; the shortcuts we take with those whom we believe to be guilty injure only those wrongfully accused and, ultimately, ourselves.") Those safeguards were not followed here; if they had been, Mr. Foster would not have been improperly detained.

"The mere fact that the defendant is charged with a crime cannot be used as a basis for a determination of dangerousness." *Scott,* 450 F.3d at 874 n. 15. As the Ninth Circuit explained, it

cannot be presumed based on the pending charges, that the defendant is any more likely than other members the public to commit offenses in the future. *Id.* at 874.

> That an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit crime if he is released from custody. **Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt.** *Id.*

Concerned that courts might be tempted to detain individuals based on the charges being alleged against them, Congress explicitly reiterated the constitutional presumption of innocence in the Bail Reform Act, mandating that "nothing in [the Bail Reform Act] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). The "corollary" of the presumption of innocence is "that the right to bail should be denied only for the strongest reasons." *Motamedi*, 767 F.2d at 1407. The magistrate judge mentioning the firearm found in the safe as a reason to deny release directly contradicts the law highlighted above.

In other words, Congress could not have been clearer that when it instructed courts to look at the weight of the evidence against a defendant, it is not for the purpose of determining whether the defendant committed the offense as charged. Indeed, it is impermissible for the court to use proffered evidence at a detention hearing to make a preliminary determination of guilt and detain an individual based on the likelihood that he will be convicted. *See, e.g., Motamedi*, 767 F.2d at 1407 (The Bail Reform Act "neither requires nor permits a pretrial determination that the person is guilty"); *Dang*, 2013 U.S. Dist. LEXIS 112758 (explaining that at a detention hearing the court was not at liberty to presume the conduct alleged constituted criminal conduct.)

The weight of the evidence "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." Where, as occurred in the magistrate court, the allegations against the defendant are presumed to be both true and to constitute criminal conduct, the "court impermissibly makes a preliminary determination of guilt" and unconstitutionally converts pretrial detention into substantive punishment in violations of "the Fifth and Eighth Amendment's prohibitions of deprivation of liberty without due process and of excessive bail." *Motamedi*, 767 F.2d at 1403; 1407-08.

Because the weight of evidence when coupled with the presumption of innocence is, as a general rule, not particularly probative of the issues relevant at a detention hearing (risk of

nonappearance and specific future danger), the Ninth Circuit has repeatedly emphasized "that the weight of the evidence is the least important of the various factors" at a detention hearing. *Id.* at 1408; *see, e.g., Townsend,* 897 F.2d at 994 (same). Of course, where, as here, the evidence proffered is weak with respect to establishing *all* of the elements in the charges alleged, "that becomes an important factor favoring release." *Chen,* 820 F. Supp. at 1207.

Mr. Foster has stable life as a devoted father to his five children, and he has tremendous support from his aunt. He has only one felony conviction, and it was 20 years ago. The fact that he is out on surety bond defending himself in the Merced County case is not evidence that he presents an identified and articulable *future* threat. Moreover, he is presumed innocent in that case, and "innocence can only raise an inference of innocence, not of guilt." *Scott,* 450 F. 3d at 874.

Finally, even if the government were to meet its burden of establishing by clear and convincing evidence that Mr. Foster presents a danger to the community, it cannot meet its burden of establishing by clear and convincing evidence that the conditions proposed by Pretrial Services are inadequate to reasonably assure the safety of the community, let alone that there are no combination of conditions this Court could fashion that would reasonably assure the safety of the community short of pretrial incarceration. *See, e.g., United States v. Beckett,* 2011 U.S. Dist. LEXIS 49414 (N.D. Cal. 2011) (releasing an individual charged with trafficking methamphetamine based on wiretap evidence, noting that the court's inquiry under § 3142 is not whether the defendant is guilty of the offenses, but whether "considering the factors in section 3142(g) any conditions in section 3142(c) will reasonably assure [the defendant's] appearance and the safety of the community"); *United States v. Sanchez,* 2011 U.S. Dist. LEXIS 22395 (C.D. Cal. 2011) (noting that the government's concerns that the defendant would engage in future methamphetamine trafficking, while legitimate, "do not constitute clear and convincing evidence that there are no conditions or combination of conditions that would reasonably assure the safety of the community if Defendant were released"); *United States v. Bright,* 2009 U.S. Dist. LEXIS 5399 (N.D. Cal. 2009) (finding that while the government had met its burden of establishing the defendant "would likely sell drugs and arm himself," there were conditions the court could fashion that would reasonably assure the community's safety from this future threat, and thus pretrial detention was not appropriate.)

Pretrial services has concluded based on its individualized assessment of Mr. Foster, that the safety of the community can be reasonably assured by imposing, among other conditions, the approved third-party custodian, location monitoring, a curfew from 9 p.m. to 6 a.m., and relinquishment of any firearms in possession. Mr. Foster is viewed by Pretrial Services as someone who is willing to work and who would be receptive to its guidance.

Given the totality of the circumstances, including Mr. Foster's successes as a father of five, the role he has played, and continues to play, in raising his children to be stable, thoughtful, well adjusted, law abiding citizens, his limited criminal history that shows his last conviction dating back 20 years, and his consistent track record of making court appearances as required makes him a model candidate for pretrial release pursuant to Pretrial Services recommendation. The presumption of innocence and the fact that it is only the rare case in which a defendant qualifies as a member of the "small but identifiable group of particularly dangerous defendants" for whom detention is appropriate, as well as Pretrial's recommendation of release after assessing him and his history and characteristics shows that there are in fact conditions that this Court can fashion that will reasonably assure Mr. Foster's attendance as required as well as the safety of the community.

//
//
//
//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

For the reasons stated above, Mr. Foster's detention violates 18 U.S.C. § 3142, Mr. Foster respectfully moves this court, pursuant to 18 U.S.C. § 3145(b), for an order revoking the detention order issued March 31, 2015, and releasing him pursuant to the least restrictive conditions necessary to reasonably assure his appearance as required and the safety of the community as identified by Pretrial Services.

Respectfully Submitted,

Dated: September 22, 2015

/s/ Mark A. Broughton
MARK A. BROUGHTON
Attorney for Defendant
IRAN DENNIS FOSTER

# **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ................................................................................ 1

II. STANDARD OF REVIEW ................................................................ 3

III. ARGUMENT ...................................................................................... 3

    A. Because There Exists a Combination of Conditions that This Court Can Fashion that Will Reasonably Assure Mr. Foster's Appearance as Required and the Safety of the Community, the Bail Reform Act Mandates that this Court Release Mr. Foster Pending Trial ................................... 3

        1. Mr. Foster has Rebutted the §3142(e)(3) Presumption With Credible Evidence that He Represents Neither a Serious Flight Risk Nor a Danger to the Community ........................ 6

        2. Given the Totality of the Circumstances, the Government Cannot Satisfy Its Heavy Burden of Establishing that There are No Conditions this Court Can Fashion that Will Reasonably Assure Mr. Foster's Appearance as Required ......................... 2

        3. Given the Totality of the Circumstances, the Government Cannot Satisfy Its Heavy Burden of Establishing that There are No Conditions this Court Can Fashion that Will Reasonably Assure the Safety of the Community ................................. 12

IV. CONCLUSION .................................................................................. 16

**TABLE OF AUTHORITIES**

**PAGE**

**FEDERAL CASES**

*Stack v. Boyle*
342 U.S. 1 (1951) .................................................................................................. 5

*Unites States v. Beckett*
2011 U.S. Dist. LEXIS 49414 (N.D. Cal. 2011) ................................................. 14

*United States v. Bright*
2009 U.S. Dist. LEXIS 5399 (N.D. Cal. 2009) ................................................... 14

*United States v. Chen*
820 F. Supp. 1205 (N.D. Cal. 1992) ............................................................. 4, 7, 13

*United States v. Conway*
2011 U.S. Dist. LEXIS 86034 (N.D. Cal. 2011) ................................................ 5, 7

*United States v. Dang*
2103 U.S. Dist. LEXIS 112758 (N.D. Cal. 2013) .......................................... 6, 9, 13

*United States v. Himler*
797 F.2d 156 (3d Cir. 1986) ................................................................................ 10

*United States v. Hir*
517 F.3d 1081 (9th Cir. 2008) ............................................................. 3, 5, 6, 7, 10

*United States v. Honeyman*
470 F. 2d 473 (9th Cir. 1972) ............................................................................... 6

*United States v. Koening*
912 F. 2d 1190 (9th Cir. 1990) .............................................................................. 3

*United States v. Motamedi*
767 F.2d 1403 (9th Cir. 1985) .......................................................................... 6, 13

*United States v. Salerno*
481 U.S. 739 (1987) ..................................................................................... 4, 5, 12

*United States v. Sanchez*
2011 U.S. Dist. LEXIS 22395 (C.D. Cal. 2011) ................................................. 14

*United States v. Scott*
450 F.3d 863 (9th Cir. 2006) ....................................................................... 5, 6, 12, 14

*United States v. Singleton*
182 F. 3d 7 (D.C. 1999) .................................................................................................. 10

*United States v. Townsend*
897 F.2d 989 (9th Cir. 1990) ...................................................................................... 4, 13

**STATE CASES**

*Serna v. Superior Court*
40 Cal. 3d 239 (1985) ................................................................................................... 11

iii